# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**HILLARY K. LEFFLER,**

        **Plaintiff,**

**v.**                                        **Case No: 6:20-cv-615-DCI**

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**

_____

## MEMORANDUM AND OPINION

**THIS CAUSE** is before the Court on Claimant's appeal of an administrative decision denying her application for a period of disability and disability insurance benefits. In a decision dated February 6, 2019, the Administrative Law Judge (ALJ) found that Claimant had not been under a disability, as defined in the Social Security Act, from June 15, 2014, through the date of the decision. R. 33. The Appeals Council denied Claimant's request for review on February 22, 2020. R. 1.

Having considered the parties' joint memorandum and Claimant's reply to the Commissioner's response, the Court concludes that the Commissioner's decision is due to be **AFFIRMED**.

### I.      Issues on Appeal

Claimant makes two arguments on appeal: (1) the Appeals Council improperly rejected new and material evidence; and (2) the ALJ improperly evaluated Claimant's pain testimony. Doc. 26.

## II.      Standard of Review

As the Eleventh Circuit has stated:

> In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and quotations omitted).   "With respect to the Commissioner's legal conclusions, however, our review is *de novo.*"  *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).

## III.     Discussion

### A.  Issue One:  The Appeal's Council's Decision to Deny Claimant's Request for Review

At step two of the sequential evaluation process, the ALJ must decide whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe.  20 C.F.R. § 404.1520(c).  In the instant case, the ALJ determined that Claimant has the following severe impairments:  degenerative disc disease; low back pain; migraine headaches; photophobia; hearing loss with vertigo; hypertension; and partial incontinence.  R. 25.

At step four of the sequential evaluation process, the ALJ found that Claimant had the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) allowing for occasionally climbing ramps and stairs; no climbing ladders, ropes, and scaffolds; occasional balancing; frequent kneeling, crouching and crawling; and no work in unprotected heights or with moving mechanical parts.  The claimant must avoid concentrated exposure to humidity, wetness, temperature extremes, vibrations, and noise.  R. 28.

With respect to the migraine impairment, Claimant contends that the Appeals Council erred in its rejection of new and material evidence that her neurologist, Paul Krenzer, M.D., submitted after the ALJ's decision was rendered.  Doc. 26.  A claimant is generally permitted to present new evidence at each stage of the administrative process.  *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1261 (11th Cir. 2007).  The Appeals Council must consider evidence that was not presented to the ALJ when that evidence is new, material, and chronologically relevant.  *Id.*; *see* 20 C.F.R. § 404.970(a)(5).  A piece of evidence is new if it is not cumulative of other evidence in the record, *see Robinson v. Astrue*, 365 F. App'x 993, 996 (11th Cir. 2010), it is material if "there is a reasonable possibility that the new evidence would change the administrative outcome," *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987), and it is chronologically relevant if it "relates to the period on or before the date of the [ALJ's] hearing decision,"  20 C.F.R. § 404.970(a)(5).

The Appeals Council must grant the petition for review if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record."  *Ingram*, 496 F.3d at 1261.  However, the Appeals Council has the discretion to refuse review of the ALJ's decision denying benefits.  *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015).  If the Appeals Council considers new evidence but denies review, the Appeals Council is not required to articulate its reasons for denying review.  *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 784-85 (11th Cir. 2014).   If a claimant challenges the Appeals Council's denial, the reviewing court must determine whether the new evidence renders the denial of benefits erroneous.  *Id*. at 785 (citing *Ingram*, 496 F.3d at 1262).

Claimant states that her current attorney first reviewed the case after the ALJ's decision and "the one thing that was noticeably absent from the record was a treating physician's opinion about how much the migraines limited her ability to do work-related activities." Doc. 26 at 32.

Accordingly, the attorney sent a Headache Medical Source Statement (the Statement) to Dr. Krenzer to be completed. *Id*. at 32. While the Statement dated March 22, 2019 was executed after the ALJ's decision, Dr. Krenzer noted that the opinion covered 2016 (date of first treatment) through March 2019. R. 15.

The Statement allows the physician to indicate by checking a box that the intensity of the patient's headaches is "severe – prevents all activity." R. 15, 19. Dr. Krenzer checked this box along with other boxes indicating that Claimant's symptoms associated with her headaches include nausea, phonophobia, photophobia, and vertigo. R. 15. Dr Krenzer also indicates on the Statement that bright lights and noise trigger the headaches, and bright lights worsen the headaches. R. 16. Dr. Krenzer checked off that emotional factors contribute "somewhat" to the severity of Claimant's headaches. R. 17.

Further, Dr. Krenzer opined in the Statement that Claimant's impairments were expected to last for at least 12 months, and she had approximately 18 headaches per month typically lasting 24 hours. 15, 17. Dr. Krenzer further opined, by checking a box, that while having a headache, Claimant would generally be precluded from performing even basic work activities and would need a break from the workplace. R. 17. Dr. Krenzer checked boxes indicating that Claimant would likely be off task 25% or more of the time while at work and her impairments would cause her to be absent from work 4 or more days per month. *Id*.

The new attorney submitted the Statement to the Appeals Council as new evidence in support of the disability claim. On February 22, 2020, the Appeals Council denied Claimant's request for review and stated the following:

> You submitted headaches medical source statement signed by Robert Krenzer, dated 2016 to March 22, 2019 (5 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence.

R. 2.

Claimant challenges the Appeals Council's decision and describes Dr. Krenzer's opinion as "new, relevant and material."  Doc. 26 at 29.  Specifically, Claimant asserts that the Appeals Council erred because the ALJ's RFC conflicts with Dr. Krenzer's opinion in that the physician diagnosed Claimant with chronic daily headaches which "prevented all activity."  *Id*. at 33.

Turning to the ALJ's decision, with respect to the migraine headaches, the ALJ found the following:

> As for migraine headaches and photosensitivity, the medical record is partially consistent with the subjective allegations.  The claimant provided related medical evidence.  This includes diagnoses for migraine headaches with ancillary vertigo, tinnitus, and hearing loss (See e.g., 1 F/3; 7F/10).  The claimant admitted to ringing in the ears; vertigo; hearing loss; ear pain; ear pressure; and headaches (See e.g., 1 F/3).  The vertigo was most likely related to migraines (1 F/5).  When she presented for a photophobia medical examination, she was wearing sunglasses (See e.g., F/10 (noting the examiner was unable to get a good look at the claimant due to the photophobia)).  This includes evidence about complaints and treatment, including Botox (ineffective) (See e.g., 7E; 2F/10); headache prescriptions like Topomax (See e.g., 1F/11); anticonvulsants; beta blockers; antidepressants; and Imitrex without benefit (See e.g., 7F/8, 11).  The claimant did not find vestibular rehabilitation "terribly helpful" (See e.g., 7F/8).
>
> However, the totality of the record is more conservative than the allegations.  In particular, the record shows unremarkable diagnostic brain studies (See e.g., 1F/10; 2F/26).  The claimant's audiogram showed mild hearing loss in low frequencies to normal hearing in high frequencies (See e.g., 1F/5-6).  The claimant's neurological examination was normal (See e.g., 7F/10).  Nerve conduction and balance tests were negative (See e.g., 8F/24).  The claimant's eye examination was normal (See e.g., 3F).  Studies for dizziness noted enhanced dizziness and nausea on VNG subtests, however, overall the clamant had a normal VNG; there was no indication of central or peripheral vestibular pathology (See e.g., 1F/6).  In addition, clinical evidence documented the ability to hear a conversational voice; and normal ear, musculoskeletal and neurological examinations (See e.g., 1F/5; See also 2F.18 (hearing intact bilaterally)).  Treatment has also been quite conservative, generally involving little more than routine medications; lifestyle changes; and monitoring.  For example, in January 2019, the claimant was advised to avoid migraine triggers such as anxiety, fatigue, stress, bright sunlight, cold, heat, and noise.  She was also advised prevention methods such as stopping smoking; reducing caffeine and sugar; avoiding alcohol; improving sleep and eating habits; increasing water intake;

and limiting the use of acute headache medications/overuse (See e.g., 13F/3). The treatment record also shows that the claimant has more commonly denied or made no mention of the related allegations when speaking with her treating sources. For example, while admitting to balance loss, she denied tremors, seizures; speech difficulties; muscular weakness; tingling; and numbness (See e.g., 1F/4). She also denied a roaring sound in the ears; ear discharge; and itching in the ears (See e.g., 1F/3. The medical evidence does not reflect related surgeries; extended inpatient treatment; hearing aids; or consistent/regular use of related neurologist, audiologists, physical therapists, or ENT specialists.

\*\*\*

As for the opinion evidence, great weight is given to the state agency medical opinion by Harold Adelman, M.D., finding that the claimant is capable of a range of Light work (See 5A; 6A). This is persuasive. As a State agency source, this doctor had the advantage of program experience and familiarity with our standards and definitions. This opinion is also largely consistent with the medical record outlined above, including conservative objective medical evidence as well as the generally conservative clinical signs and treatment (See e.g., 1F/3, 10; 2F/18; 7F/10; 8F/11, 14, 24; 13F/2-3, 22, 30). Accordingly, this opinion is the basis for the RFC assessment.

R 30-31, 32.

Claimant states that she "believes the new evidence will change the outcome of the decision because it was noticeably absent when the ALJ assessed [her] residual functional capacity." Doc. 26 at 29. Claimant's argument largely centers on her comparison between Dr. Krenzer and Dr. Adelman's opinions. Claimant states that the ALJ gave Dr. Adelman's opinion "great weight" because it was "largely consistent with the medical record" discussed within the decision. Doc. 26 at 35. However, now that Dr. Krenzer offers new evidence, Claimant contends that the RFC is no longer based on substantial evidence. *Id.* In the joint memorandum, Claimant argues that even if there is good cause to not give Dr. Krenzer's opinion controlling weight as her treating physician, the ALJ would err to give greater weight to Dr. Adelman's opinion as a non-examining physician. *Id.* at 36.

The Court finds that the record does not support this argument.  While Claimant describes Dr. Krenzer as her treating physician in the joint memorandum, she concedes in her Reply that Dr. Krenzer was actually not her treating physician.  Doc. 30 at 3.  This is so because Dr. Krenzer only conducted one examination on June 16, 2016, approximately three years before he filled out the Statement.[1]  A one-time examining physician's opinion is not entitled to any specific weight or deference.  *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); *Huntley v. Soc. Sec. Admin, Comm'r.*, 683 F3d. Appx. 830, 832 (11th Cir. 2017) ("The [ALJ] need not defer to the opinion of a physician who conducted a single examination because that physician is not a treating physician.").[2]

In any event, by deciding that the Statement does not show a reasonable probability that it would change the outcome of the ALJ's decision, the Appeals Council found that Dr. Krenzer's opinion was not material.  Taking into consideration that Dr. Krenzer examined Plaintiff, there is good cause to support this determination.  First, Dr. Krenzer's opinion on the form is cursory in nature and consists of checked boxed and fill-in-the-blank responses without accompanying explanations.  For example, Dr. Krenzer checked that Claimant is incapable of even "low stress"

---

[1] The Court notes that it is Claimant's position that Dr. Krenzer had ready access to several years of treatment notes from his colleague, Dr. Crumble, who diagnosed Claimant with chronic migraine.  Claimant contends that since, Dr. Krenzer noted in the record of the June 16, 2016 visit that Claimant's diagnosis was "chronic migraine w/o aura intractable w/o SM" assessed as "unchanged," this indicates that Dr. Krenzer continued the same diagnosis as Dr. Crumble.  Doc. 30 at 2.  However, as the Commissioner points out, Dr. Krenzer's notes from the June 16, 2016 visit state only that one of his colleagues saw Claimant in the past for headaches and there is no indication that he reviewed or had access to Dr. Crumble's record.  R. 478.  There is no mention of Dr. Crumble. *See id.*  Claimant's speculations on the connection between Dr. Crumble and Dr. Krenzer's records is not evidence.

[2] Claimant adds to her concession that it does not matter that Dr. Krenzer is not a treating physician under the new regulations.  That may be, but there is no argument before the Court that the new regulations are applicable to this case.

work but left blank the section that directs the physician to "[p]lease explain the reasons for your conclusion." R. 16-17.

The form also inquires as to Claimant's treatments and directs the physician to describe any treatment. R. 17. Dr. Krenzer simply answered: "no response to any treatment." *Id*. But Dr. Krenzer failed to include the description of any such treatment. Further, Dr. Krenzer left the prognosis section blank and when asked on the form "[i]f there are premonitory symptoms or aura, please describe," he merely wrote "aura." R. 15, 17. Again, Dr. Krenzer offered no description.

Second, Dr. Krenzer's opinion is not necessarily consistent with the 2016 examination notes. While the note does reflect phonophobia, photophobia, and vertigo, Claimant also presented at the examination as not being under distress, her neurological exam, gait, and posture were normal, and her speech, comprehension, and hearing were normal. R. 479-480. These findings do not support Dr. Krenzer's opinion that Claimant is prevented from all activity especially in light of his terse and conclusory responses to the answers on the form.

Third, Dr. Krenzer only assessed Claimant on one occasion. His findings that Claimant's headaches have no response to treatment and occur 18 days of the month for 24 hours at a time and are so severe as to prevent all activity are not substantiated elsewhere in the medical record. As the ALJ discussed at length, the totality of the record is more conservative. R. 31. Moreover, the Court is not persuaded by Claimant's argument challenging the ALJ's weight given to Dr. Adelman's record based on Dr. Krenzer's Statement.

For these reasons, the Court finds that the Appeals Council did not err in determining that Dr. Krenzer's opinion was immaterial. The Statement would not otherwise undermine the substantial evidence supporting the ALJ's decision.

Finally, in the reply, Claimant argues that the Appeals Council failed to provide adequate reasoning to distinguish this case from the facts of *Washington v. Soc. Sec. Admin.*, 806 F.3d 1208, 1211 (11th Cir. 2015). To the contrary, the Appeals Council was not required to provide a more detailed explanation of why it denied Claimant's request for review or make a specific finding with regard to the new evidence. *Mitchell*, 771 F.3d at 784-85. Accordingly, to the extent Claimant raises this as a separate argument, there is no merit to the claim.

### B. Issue Two: the ALJ's Evaluation of Claimant's Pain Testimony

Claimant gave testimony at her hearing regarding her migraines, vertigo, and nausea. In part, the ALJ stated the following with respect to Claimant's statements:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. Accordingly, these statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence.

R. 30.

Claimant argues that the ALJ's finding that her testimony was not reasonably consistent does not fully consider the record. Doc. 26 at 48. A claimant may establish "disability through his own testimony of pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam). If the ALJ finds that the claimant has a medically determinable impairment that could reasonably produce the claimant's alleged pain or other symptoms, the ALJ must then evaluate the extent to which the intensity and persistence of those symptoms limit the claimant's ability to work. 20 C.F.R. § 404.1529(c)(1). If the ALJ decides to discredit the claimant's testimony, he or she must articulate specific and adequate reasons for doing so. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Jones v. Dep't of Health and Human Servs.*,

941 F.2d 1529, 1532 (11th Cir. 1991).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  *See Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986).

In the Eleventh Circuit, subjective complaints of pain are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. By this standard, there must be: 1) evidence of an underlying medical condition, and either 2) objective medical evidence that confirms the severity of the alleged symptom arising from the condition, or 3) evidence that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). The ALJ must consider "all of the record, including the objective medical evidence, the claimant's history, and the statements of claimant and her doctors." *Costigan v. Comm'r*, 603 F. App'x 783, 786 (11th Cir. 2015) (citing 20 C.F.R. § 404.1529(c)(1)-(2)).

Here, Claimant describes her testimony regarding the lack of viable results from procedures and medications; her adjustment to the photophobia through the use of scarves, sunglasses and altering the brightness on electronic devices; and the nature of her symptoms and how she responds to an "event."  Doc. 26 at 45.  Claimant explains that she testified that she "does her own self-care except that she asks her boyfriend to be close just in case she gets vertigo in the shower," and that she testified that she does not shave her legs because of vertigo.  *Id*. at 45-46.  She adds that she testified that she gets low back pain 3 or 4 times a week affecting her gait and prompting her to put her ankle up to relieve swelling.  *Id*. at 45.

Claimant argues that the ALJ did not evaluate this testimony in compliance with the Eleventh Circuit's pain standard.  *Id*. at 45-49.  Claimant contends that the ALJ improperly treated

her migraines like a "broken arm that doesn't show up on an x-ray." *Id*. at 48.  Claimant states that her "normal findings simply confirm the diagnosis of chronic migraine headaches." *Id*. at 47-48.  Claimant concludes that it is not enough "to make a conclusory statement that the Claimant's allegations are not credible."

The Court agrees with the Commissioner that substantial evidence supports the ALJ's analysis of Claimant's allegations.  The ALJ did not simply make conclusory findings.  The ALJ discussed the Claimant's testimony and her symptoms in great detail.  R. 29.  The ALJ then articulated several grounds for finding that Claimant's testimony is inconsistent with the record.  Namely, the ALJ found that the medical record is partially consistent with Claimant's allegations regarding her spine impairment, but the totality of the record supports fewer long-term problems setting forth specific examples of the diagnostic and clinical evidence.  R. 30.  The ALJ stated that her spine-related treatment history is also more conservative than what the allegations suggest, in that the record does not reflect significant surgical interventions, and does not show regular or extended hospitalizations, inpatient rehabilitation care, or consistent frequent intervention by orthopedists, neurologist, physical therapists, or pain management specialists.  *Id*.  The ALJ added that Claimant's pain medications helped reduce the back pain and warm compresses and a muscle relaxer controlled her muscle spasms.  *Id*.

With respect to her headaches, as is discussed more fully with respect to the first issue, the ALJ found that the medical record is only partially consistent with the subjective allegations and that the totality of the record is more conservative than the allegations.  R. 30-31.  Again, the ALJ did not stop with that statement and meticulously discussed the record of Claimant's examinations and treatment.  Likewise, the ALJ found that the medical record is only partially consistent with Claimant's allegations regarding her hypertension finding that the condition is not associated with

regular or significant diagnostic or clinical abnormalities, and the corresponding treatment history is minimal.  R. 31.

Ultimately, the ALJ found that exertional restrictions are warranted because of the confirmed spine abnormalities with a light work RFC because of "a normal lower extremity nerve conduction study, and unremarkable clinical evidence, including benign findings about independent ambulation."  R. 32.  The ALJ also found that non-exertional limitations are appropriate with the postural limitations based on the spine fusion along with "mixed clinical evidence about spine tenderness and vertigo."  *Id*.  The RFC also takes into consideration the dizziness allegations and the size effects of painkillers, and environmental restrictions due to Claimant's spine condition, photosensitivity, vertigo, and hearing loss.  *Id*.  Lastly, the ALJ found that the RFC is supported by the evidence regarding her admitted activities with specific citations to examples from her testimony.  *Id*.

The Court concludes that the ALJ's articulated reasons support his credibility determination, including his citation to the medical evidence of record concerning the nature of Claimant's symptoms and her statements regarding her activities. Notably, contrary to Claimant's position, the ALJ accepted that Claimant's migraines were a severe impairment and properly evaluated the record as a whole as to her nonexertional limitations.  The evidence is, as the ALJ determined, inconsistent with Claimant's testimony concerning her **limitations and the ALJ's** determination is supported by substantial evidence.  *See Foote*, 67 F.3d at 1561-62 (reviewing court will not disturb credibility finding with sufficient evidentiary support).

## IV.    Conclusion

For the stated reasons, it is **ORDERED** that:

1.  The final decision of the Commissioner is **AFFIRMED**;

2.  The Clerk is directed to enter judgment for the Commissioner and close the case.

**DONE AND ORDERED** in Orlando, Florida on June 14, 2021.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties